Case number 24-2517 from the Western District of Missouri, Lucas Alzu v. Amy Huff Mr. Rice. Good morning, Your Honors. May it please the Court. Your Honors, this is a Hague Convention case brought by my client, Mr. Alzu, seeking the return of his child to Argentina where the child was born, raised, and lived his entire life. That was something that was in the pleadings and admitted in the pleadings and in the testimony. So we start from the premise in this case that the child was born, raised, and his entire life in Argentina before he was released. How many months was that, Counsel? Twenty-two months before he was released. Thank you. Proceed. I want to see how much his entire life was. Go ahead. Right. So the interesting part about this is I think this would be a normal, standard Hague case absent the issue of the pandemic that occurred in the midst of all of this. If you take the pandemic out of the equation, you have parties who moved to Argentina for the birth of the child, stayed there and lived together until early 2021 when they separated. And the mother then applied for permission to return to the United States to visit. She obtained permission in a court order that was mediated between the parties. She was supposed to come back 40 days later in January of 2022 and return. She testified that her intentions were to return and she never made the decision to stay in the United States until after she came home and consulted with counsel. Under those circumstances, it's pretty clear that that would be a simple case of a child lived in one place, had no other place at home other than Argentina, and we returned. What we have here is a case where the court focused its analysis on determining the habitual residence of the child on the parties' discussions that they had prior to moving to Argentina about continuing their nomadic travel ways. They had met in Colombia. They were living a nomadic sort of hippie lifestyle when Petitioner got pregnant. She returned to the United States because both of them had expired visas. And he started making his way back across land, across to Argentina. They had discussions during that period of time. What were they going to do? Where were they going to live? She wanted to go to the United States or Mexico. He had visa issues in the United States and in Mexico, so neither of those were a reality. Ultimately, he convinced her to come to Argentina. She agreed to Argentina, which the court found was a choice to have the baby. She arrives in December of 2019. They live in my client's mother's home. They shortly move out because she wasn't comfortable living there, and they rent an apartment or obtain an apartment from a relative. After that, they rent a house on the outskirts of town. They sign a three-year lease. She's working remotely over the Internet teaching English. He's got a job at a family pet store. So they've established a life together. But the relationship deteriorates as it happens. Now, so you had mentioned some of the determinations of the district court. Right. Now, the factual determinations of the district court are reviewed for clear error. What about the ultimate determination of habitual residency under the Hague Convention? Is that a question of law or fact? Well, the Supreme Court in Manassas describes it as a mixed question of law or fact. They say, oh, but really? And that's a fact-intensive request, so it's probably a clear error review. I think the issue potentially of whether the court applied the appropriate factors to the test could be a de novo review. Here, what you notice in the court's opinion is that it focuses almost entirely in his discussion of his findings on the fact that he believed the part, the evidence was overwhelming that the parties intended not to stay in Argentina or resume their nomadic lifestyles. I think the error is evident here in the fact that the court ignores the undisputed testimony from both parties, the admission of the respondent that she intended to stay at least until 2021. The testimony was that they, and this was, again, conversations that happened prior to coming to Argentina. They were planning the next rainbow gathering that was supposed to happen in Chile sometime in 2021, and their discussion was that they'd rent a van and travel around South America and go to that next meeting. So there was a dispute as to whether that was actually a plan, whether they would return, but the court found that they would certainly have left. Can I ask you, so when you make residency determinations under state law, and I realize this is a treaty, but you look at actions and intent, and here you kind of have the odd thing where you're not talking about an individual, but you're talking about a couple, right? And so whose actions and intent matter, and do both matter? So the Supreme Court has said when you have an infant, they can't normally acclimate as an older child might, right? They can't develop long-term relationships and have friends at school. You look to the intention of the parents, but it's not the sole thing. In fact, I think what the court described is your ultimate determination is where is the child at home? That's a determination based on not only about what the parents' intentions are, but it's not the parents' pre-intentions that happened prior to coming to Argentina. It's what did they do when they were there? Did they set up a home? Did they live together? Did they share custody of the child? Did they form family relationships? Did they have jobs? Those are the factors you're supposed to rely on. Here the court ignored all of that, although I suspect maybe... Now, the court is careful to say, I'll quote, because I think this is a key case. The court finds the testimony, comma, from both parties, comma, reflect the party's clear intention, he means both of them, reflect the party's clear intention to travel again, resuming their nomadic lifestyle after the child was born, unquote. Now, he's saying that looking at all the facts here, that was the clear intent, and of course it affects many of the other issues in the case. How do you reply to that point? So, what the court ignored is the testimony that they were going to stay there at least until the end of 2020, and the Eighth Circuit has said that you don't have to have an intent to stay in a location forever, and that goes all the way back to the Silverman v. Silverman case, that you have to have some settled purpose to stay there for a duration of time to consider the nature of the residence to be habitual. I think that's clearly apparent here, where they both said, we were going to live in Argentina at least for that year. Now, the fact of the matter is they lived much longer, almost two years. How long is long enough, though? You know, six months, are we planning to go back to the United States? I know that's not usually the case, but where do we draw the line? If you're asking, the child was only two months, and the court found that that was sufficient to establish an habitual residence. So I don't think it takes a particularly long period of time. Here, the evidence was clear. They lived together, had family relationships, extended family was involved in rearing the child, both had jobs, and I think the court missed that point and did not consider whether that was long enough, and I think that was a clear error in the application of the test. I'm getting close to my rebuttal time, so other than that, Judge, I will reserve the time. Thank you. Ms. Coelho. May it please the Court. Elena Coelho, while gotula manjis, pro bono counsel for Respondent Apelli, Amy Nicole Huff. Opposing counsel merely brings up the facts that were all prior, before the district court, that the district court properly weighed. The Supreme Court made clear in Manaski v. Tagliari that mere physical presence in a country is not dispositive. Additionally, we cannot take the COVID-19 pandemic out of the calculus here. The Supreme Court has made clear you must consider the totality of facts and circumstances. Further, there are numerous courts that have found children who have been stuck in a country due to the COVID-19 pandemic for the same amount of time or even longer than were present here did not become habitual residents of those countries. You said the magic word, habitual residents. Now, the Supreme Court in Manaski says it's a mixed question of fact and law. And generally, the Supreme Court has held that a mixed question of fact and law is reviewed de novo. Are you aware of that line of cases? I'm aware of that. However, what the Supreme Court said in Manaski v. Tagliari is that it's a mixed question of fact and law. But once the district court correctly identifies the totality of the circumstances test, as appellant admits here in his brief at page 24, the only question in applying that test is a question of fact which is reviewed for clear error. Here, the district court did correctly consider the totality of the circumstances in finding that petitioner failed to meet his burden of establishing that Argentina was the child's habitual residence at the time he was removed. As a follow-up to Judge Benton's question, is your position, I think I'm understanding your position as saying that what habitual residence means is a legal question subject to de novo review. How it's applied, though, becomes a question of fact once you have the correct legal standard. Is that sort of what you're saying? That's correct. Okay, I see. And you believe that's what Manaski says, right? I believe so, correct. Okay, thank you. Here, the district court did consider those totality of the circumstances. After assessing the credibility of both parties after two days of trial, the court summarized the unique scenario before the court, including the COVID-19 pandemic, the time the child did spend with petitioner's family, and found that, whereas here, given the intents and circumstances of both parties, that neither party planned to make Argentina the child's home. Consistent with Manaski, this also is consistent with the fact that the court should consider external facts keeping caregiving parents in a country. Here, the COVID-19 pandemic is a textbook example of a situation that kept both parties in the country for longer than they intended to remain. Appellant's arguments are contrary to Manaski or mischaracterize the district court's order. First, in his brief, he argues that the intentions were dispositive. However, as your honors already pointed out, the district court here did weigh facts, including those that were favorable to Mr. Alzu's claim. Further, the district court also found that the intent to remain in Argentina, even for a year, was not credible, and there was no evidence that either party planned to make Argentina their home. You know, if the COVID pandemic, I'm just trying to figure out the limits of what you're arguing too. If the COVID pandemic, let's say, thank God it didn't, but it lasted 12 years, right? And everyone, there was a shelter-in-place order for that many years. They may have had the intent to become nomadic, but at some point you have to assume it becomes permanent, right? I mean, 12 years is a heck of a long time. And so, I guess my question is, is why isn't, whatever, two years, I think is what it was. Why isn't that enough? Like, where do we draw the line in a situation like this? Yeah, so the district court has to consider the totality of the circumstances. And, for example, as a child gets older, you look at acclimatization. So, if you had a 12-year-old child, you would be looking at the time the child spent in school, the extracurricular activities, the friends that the child makes, and the language that the child speaks. Here, with a child that was less than two years old, the child was not enrolled in school, and the parties both testified that they never discussed school in Argentina, nor daycare. Additionally, the child was not in extracurricular activities and did not speak the language. And the district court did consider the amount of time that the child spent with Mr. Alzu's family. Noticing, for instance, that the child's first Christmas was spent with Miss Huff and Mr. Alzu's family, but, of course, Mr. Alzu himself was absent from that occasion without any explanation. But all in Argentina, right? That's all in Argentina, but mere physical presence is not enough. Don't you think it's a little odd, though, that the unfulfilled future travel plans are taking precedence over the undisputed fact that this child spent its entire life in Argentina? So, there are numerous cases where a child spent their entire life in a given country, and that country did not become the habitual residence. And the Supreme Court and numerous district courts have made clear that physical presence is not enough. You have to look at, especially where a child is too young, the intents and circumstances. And here, it showed that neither party planned to remain there. And, indeed, Mr. Alzu himself had not lived in Argentina for over a decade before the couple returned there to have the birth of the child. Therefore, two years, especially during the COVID-19 pandemic, is insufficient for the child to have become a habitual resident there. And that can be seen, for instance, in Nisbet B. Bridger, where the District of Oregon found that children lacked a sufficient connection to Scotland, even though one of them had lived there their entire lives through the COVID-19 pandemic. The Ninth Circuit has recently affirmed, and the Supreme Court has denied cert there. Did it make any difference that the parents had availed themselves of the Argentinian courts to obtain a mediation of the ability of the mother to take the child out of the country? No, Your Honor. And the District Court weighed and considered those facts and the assurances that my client made to that court. The only way that my client was able to even leave Argentina was by before going to that court because Mr. Alzu would not sign the necessary paperwork for her to leave Argentina. She ends up disobeying the court order, right? That she does. The District Court finds that? The District Court found that, and the District Court weighed that. However, the District Court found her testimony credible to the Argentinian court based on the time that she felt that she was trapped in Argentina. And he weighs that in his finding and finds that even those facts do not outweigh the fact that the child was not a habitual resident and that appellant here did not meet his burden of establishing the facts necessary to find the child was a habitual resident here. In light of all those facts that, you know, center on Argentina and the two-year period and availing themselves of the courts and things like that, how much work is the COVID-19 pandemic doing here? In other words, if somebody were to spend two years somewhere under the same facts, they could be free to go anywhere, Chile to the conference or whatever they were doing. Would that be a different case? Would you be making the same argument today? So the COVID-19 pandemic explains why she stayed here for longer than she intended, but there are numerous cases, Smith v. Smith, Delvoy v. Lee, where a child had lived in one country only for their entire life or for a longer period of time than is present here. And the district court still found that that country did not become the child's habitual residence. And so looking at the totality here, you cannot just take one factor out of it. But if you consider the COVID-19 pandemic, it explains why she stayed there for as long as she did. You can see the problem I'm having, though. I'm trying to figure this out about not so much this case, but the next case in terms of the implications you're asking us to give. And so, you know, what about 10 years? 10 years and no COVID pandemic, right? You just really need an indefinite intention to remain. And so at some point it becomes almost silly to say it's not their habitual residence if they've been there 10 years, even if they had some intention to move away. At 10 years, you would certainly be looking at the acclimatization. And I would think a 10-year-old would be going to school, would have extracurricular activities. The parents might have purchased a home. Here, there was a three-year lease that was broken, and that was standard in Argentina. And that was explained to the district court, and he credited that testimony. Here, it's also important to remember that the only consequence of there being no habitual residence is that custody will be determined by a Missouri court. Here, a U.S. citizen should not be now ripped from his home that he's been safely living in for three years from Springfield, Missouri, where that court can confidently make any custody decisions that is disputed between the two parties. Could we consider that, how long he's been in the United States? Or is that kind of begging the question, which is, you know, or do we evaluate it three years ago when the child was taken? You evaluate it three years ago. However, it's very important that, particularly in a Hague Convention case, expediency is very important. And that's why, for instance, even in Monaskey, when they did find error, they did not reverse or remand. They affirmed that district court's opinion because it is better for the child, and that's the core premise of the Hague Convention. Would that be rewarding a parent who absconds with a child to another country? It is not because here the district court found that the removal was not wrongful because it was not the child's habitual residence. Therefore, this court should affirm the district court's finding, which was based on the credibility of both parties after two days of testimony, and find that the custody determination be made by a Missouri court. Thank you for the argument. Thank you, Your Honors. Mr. Weiss. Thank you, Judge. I wanted to readdress Judge Strauss' point you made. The time period the Supreme Court has said that you look to and that the Convention presupposes is the time immediately before the wrongful removal or retention. So you do not consider the child's acclimation here in the United States or anything prior to that time frame. You solely look to that time period immediately before to determine, was the child at home in Argentina? And contrary to what counsel said, this is exactly the case the Hague Convention was enacted to prevent and what the explanatory report in the Supreme Court has said about it. The Convention was supposed to stop the very type of forum shopping that happened in this case, to stop a parent from going, taking a country from one country and going to another where they then initiated custody proceedings to try to obtain a more favorable outcome. That's what really happened here, where you had the petitioner said, I didn't intend to, I intended to come back and live with my boyfriend who had now, I have a new Argentinian boyfriend, I'm coming back. She told her mother the day she got the order, I'm not going to take the child from my father forever. And then she comes to the United States, meets with lawyers, hears her parents tell her, you need to stay, and decides to tell my client I'm not returning. And six months later, the minute the jurisdictional limit had passed to establish residency under Missouri law, filed a custody action. So I think this is precisely the type of forum shopping case the Convention was supposed to prevent. And given the pandemic, again, I think the court ignores that the parties both testified, we're going to stay there at least a year. So absent, even without the pandemic and the parties, even if you give deference to the trial court's finding that the parties were going to leave, they both said we're going to stay there until the end of 2020. And I think that is clearly sufficient time under the case law in precedent to find the child was officially resident, especially when you consider the totality of all the circumstances. They lived together, had jobs, formed family relationships and whatnot. With respect to the court's findings, I thought that the findings were clearly contradictory. On the one hand, it says if you have to have a habitual residence under the Hague Convention, it couldn't be anywhere other than Argentina because, of course, the child didn't live anywhere else habitually. But I'm also going to find that you did not meet your burden of proof, and I'm going to go farther and say that Argentina was not the habitual residence. I think that's clear error, Judge, and I encourage you to reverse the case and remand it. Thank both counsel for their arguments. Case number 24-2517 is submitted for decision by the court.